*Law Offices of*
*Susan G. Kellman*
*25 Eighth Avenue*
*Brooklyn, New York 11215*

*Telephone: 718.783.8200*                                        *Fellow, American College*
*Telefax:   718.783.8226*                                         *Of Trial Lawyers*

e-mail: kellmanesq@aol.com

January 25, 2012

Hon. Carol Bagley Amon
Chief Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re: <u>United States v. Felix Cartegana</u>
           Docket No.: 10 Cr. 750 (CBA)

Dear Chief Judge Amon:

  At a <u>Fatico</u> Hearing held on January 11, 2012, the government sought to impeach two extraordinarily competent mental health professionals, each of whom observed that my client, Felix Cartegana, is an intelligent, remorseful and motivated young man, who poses what each concluded was a "moderate" risk of recidivating, a risk which diminishes with age and treatment. Significantly, the government elected not to challenge or rebut the report submitted by Dr. Meg Kaplan and Dr. Mary Vince, who together provided treatment to Mr. Cartegana between June and September, 2011, and found Mr. Cartegana to be presently aware of the consequences of his offenses, remorseful, hopeful, intelligent and motivated to continue treatment.

  The government offers the Court no contrary professional commentary or insight.  Rather, it repeatedly sought to impeach both Dr. Krueger and Dr. Drob on issues as inane as whether either utilized an MRI or brain scan to determine whether Mr. Cartegana was feigning immaturity. Its failure to engage in a legitimate exploration of the picture of Mr. Cartegana that emerged as a result of each doctor's lifelong experience in the field of sexual deviation and their personal interactions with my client, should give the Court confidence that Mr. Cartegana's risk of recidivating is

low and his chance for a successful re-emergence into the community, after 20 years of incarceration is high.

### Dr. Richard Krueger

While government counsel sought to split hairs with Dr. Krueger on the question of whether Mr. Cartegana posed a "moderate-low" or "moderate-high" risk of recidivating, the government's submission ignores the precision with which Dr. Krueger – a nationally and internationally recognized psychiatrist whose expertise is specifically oriented to sexual deviance – formulated the opinions he proffered in his report and at the hearing, regarding his prognosis for Felix's future. Because Dr. Krueger could not be legitimately impeached, the government spent considerable time expressing indignation regarding whether Mr. Cartegana was raped as a young boy or "merely" sexually molested – when the real question before this Court – the question beyond what is an appropriate "punishment," is whether or not Felix Cartegana poses a risk of recidivating and how one can best assess that future risk.

Dr. Krueger testified in great detail about the strengths and weaknesses of many different diagnostic instruments that he utilized in assessing Mr. Cartegana's risk of recidivating. Each is clearly spelled out in his report. Ultimately, Dr. Krueger concluded that Mr. Cartegana needs treatment and monitoring, and he posited that, "with this I think his risk could certainly be low, certainly with in the bounds of what would be appropriate for community – for his existence in the community." HR at 80. Dr. Krueger also testified that he was commissioned by NYS Governor George Pataki to assist in developing a civil commitment protocol. HR at 81.

### Dr. Sanford Drob

Dr. Drob's findings are equally favorable to Mr. Cartegana. In the concluding paragraph of his report, he writes, "Unlike many sex offenders I have examined in the past, Mr. Cartegana acknowledges his sexual deviation and criminal conduct, recognizes its wrongfulness and expresses a pressing desire to enter into treatment. He is intelligent and has the potential to gain insight into the factors that trigger his deviant behavior and the cognitive distortions that have promoted and rationalized it, and to gain control over such behavior." Drob Report, final page. With treatment, Dr. Drob's report continues that, "while it is impossible to predict with exactitude how Felix Cartegana will end up," he continues, "as a skilled and experienced professional, I am of the view that such treatment, in

combination with other factors, including Mr. Cartegana's awareness of this problem, his desire for change, his awareness of the severe consequences that have resulted from his actions, and the natural developmental/emotional changes that occur with age, will significantly lower this defendant's risk of recidivism over time, and increase the likelihood of full rehabilitation."

At the <u>Fatico</u> Hearing, Dr. Drob said much the same thing, and pointed to the fact that all of the instruments utilized by himself and by Dr. Krueger were "blind" to treatment, in other words, reached their "risk" conclusions without considering the potential benefits of treatment and/or post-release monitoring or supervision. Dr. Drob repeatedly testified that treatment was a key component to assuring a positive prognosis regarding a young, motivated and intelligent young man like Felix Cartegana. HR at 151-152.

<u>Dr. Meg Kaplan and Dr. Mary Vince</u>

Significantly, Dr. Kaplan, who together with Dr. Vince formulated a treatment protocol for Mr. Cartegana, is extremely well qualified to speak to the issue of the risk of recidivism posed by Felix Cartegana. Among Dr. Kaplan's professional credentials, her CV includes her role as the head of a parole board designated to deal exclusively with the question of when the State of New Jersey can safely release sex offenders back into the community. As Chair of this Board, Dr. Kaplan's primary responsibility is to recommend if and when NJ sex offenders are "safe" to be released to the community. With this background and training, Dr. Kaplan writes that Felix "developed insight about and which improved significantly," referring to his response to treatment, however brief. Kaplan/Vince Report at p. 2, paragraph 4. Through their treatment, Drs. Kaplan and Vince report that, "Mr. Cartegana had virtually no understanding of the damage that sexual abuse inflicts on children…he learned how his behavior had damaged the children he has abused and how the production of child pornography was extremely victimizing because of the actual sexual abuse propagated on children, and the irreversible damage done by disseminating images of abuse on the internet." Kaplan/Vince Report at p. 2-3, paragraph 6. However, they conclude that paragraph by noting that, "During the course of treatment, Mr. Cartegana expressed genuine remorse for giving in to his sexual impulses, breaking his family's trust in him, and harming children." Overall, they conclude that, "during the treatment sessions, Mr. Cartegana was highly motivated, engaged, and insightful." p. 3.

Probation Recommendation Is Substantially
<u>Lower Than The Government's Recommendation</u>

      The Probation Department recommends a sentence of 30 years, which is still ten (10) years beyond the sentence urged on the Court by defense counsel; however, the PSR recommendation takes no guidance from the expert reports proffered by all of the doctors.  Probation disregards the "mitigating factors" articulated by Dr. Krueger, to wit, Mr. Cartegana's own history of sexual abuse and his intellect, which all of the doctors agree will help him to gain insight into the factors that trigger his deviant behavior and the cognitive distortions that have promoted and permitted him to rationalize it.

      Counsel respectfully disagrees with Probation's assessment that Dr. Drob and Dr. Krueger "miss the point" in that they "seem to be engaging exclusively in some predictive analysis of the defendant's conduct. That is, they focus in large part on his threat level in the future.  They feel they need to somehow mitigate his repeated acts of victimizing children in this case by assessing whether he will continue to victimize children."  Indeed, it is here that counsel submits, respectfully, that it is Probation that "misses the point."  There is no question that the paramount issues before the Court implicate (1) the appropriate punishment for his crimes; and, (2) a prognosis which indicates the relative risk to the community upon Felix's release, whenever that is.  Clearly, if the doctors did not evaluate the risk of recidivism, the Court could not in good conscience release Mr. Cartegana in less than the maximum time permissible under the statute.  Thus, each of the doctors was asked by counsel to assess these risks.

      Ultimately, the Court is more than skilled than most at determining an appropriate punishment for heinous conduct; however, it was counsel's hope, indeed, expectation that if professionals trained to determine the risk of recidivism could proffer to Your Honor that the risk of Mr. Cartegana recidivating was manageable, that the Court would feel more comfortable imposing a punishment that permitted this young man to have a future.  Neither counsel nor Mr. Cartegana dispute Probation's assertion that his conduct requires punishment; however, it is respectfully submitted that 20 years of confinement is, in fact, an appropriate punishment, particularly, in the case of a young man who has himself been the victim of sexual abuse, and has shown a willingness to change and is motivated to do so.

   Accordingly, Mr. Cartegana submits himself to the wisdom and the mercy of this Court.

                   Respectfully submitted,

                   Susan G. Kellman

Cc: Michael Canty, Esq.
   Asst. United States Atty.

   Patricia Sullivan, USPO

   Felix Cartegana